[No. 3196, Aug. 26, 1927]

OWENS v. OWENS.

[259 Pac. 822]

SYLLABUS BY THE COURT

1.  In an affidavit of nonresidence, to procure service by
publication, if, to avoid mailing copy of complaint and sum-
mons, defendant's residence is stated as unknown, when in
fact it is readily ascertainable, there is fraud upon the
court and upon the defendant, and equity will vacate a
decree of divorce thus obtained.

2.  In a suit to vacate a decree of divorce for fraud, one
marrying the defendant after and in reliance upon, the di-
vorce is not a necessary party.

Appeal from District Court, Bernalillo County; Hel-
mick, Judge.

Suit by Kathryne Kasser Owens against George L.
Owens to vacate a decree for divorce. From a judg-
ment for plaintiff, defendant appeals. Affirmed and
remanded.

H. B. Jamison, of Albuquerque, for appellant.

Rodey & Rodey, of Albuquerque, for appellee.

OPINION OF THE COURT

WATSON, J.  [1]  Appellant obtained a final de-
cree of divorce from appellee, in Bernalillo county, on
service by publication.  Thereafter appellee commenc-
ed, in the same court, the present suit to vacate the said
decree, upon the ground of appellant's fraud in sup-
pressing notice of the proceedings, and the further
ground that the district court of Bernalillo county was
without jurisdiction of the divorce case, because appel-
lant had not been a resident of this state for the requis-
ite one year. The trial court sustained both grounds of
the complaint, and rendered judgment setting aside the
decree of divorce.

As compliance with Code 1915, §§ 4095, 4096, appel-
lant included in his complaint for divorce the follow-

[1] 19CJ p. 163 n. 75; p. 166 n. 28; p. 167 n. 31; 32CYC p. 467
n. 25.    [2] 19CJ p. 172 n. 11, 12, 13.

ing allegation:

> "That defendant is a nonresident of the state of New Mexico, and that plaintiff does not know the present whereabouts of the said defendant and has no means of ascertaining her present address."

The complaint alleges:

> " * * * In truth and in fact the said George L. Owens knew * * * that the address of the said Kathryne Kasser Owens was at No. 2384½ Summit street, Columbus, Ohio, her s'ster's home address; and * * * that the said George L. Owens, notwithstanding * * * that he did * * * know the address of Kathryne Kasser Owens, * * * willfully and fraudulently failed to state the same in his complaint * * * that neither the said George L. Owens, his agent, or attorney deposited a copy of the summons and complaint in the post office * * * and * * * totally failed to mail this plaintiff any copy of the summons and complaint; and * * * that she had no knowledge of the pendency of the suit. * * * "

It is not claimed that appellant mailed a copy of the summons and complaint; nor that appellee had any knowledge or notice of the proceedings. As to appellant's knowledge of appellee's address, the court found:

> "That George L. Owens, on the 26th day of June, 1924, may not have known the actual street address of the said Kathryne Kasser Owens and his statement to that effect may be literally true, but that he had means of ascertaining her then address and wholly failed in making any effort whatsoever to notify the said Kathryne Kasser Owens of the filing of the complaint. * * * "

> "That the residence of Kathryne Kasser Owens was known by George L. Owens on June 26, 1924, at the time of filing the complaint, * * * to be either in Detroit, Mich., or Columbus, Ohio, although the said George L. Owens did not have positive knowledge of the street address at either place.

> "It may be literally true that George L. Owens did not know the address of his wife when he filed his suit for divorce; that is, probably literally true—I suppose he did not know where she was. It was not true that he could not have located her.

> "It is apparent to the court from the whole record that this man ran away from Detroit to escape his wife and came to New Mexico incidentally on his way to California and procured a divorce by probably a technical compliance with the statute of service by publication, with the idea of

keeping the proceeding secret from his wife, and with the idea of getting a default decree without her actual knowledge. He could easily have located her, but he did not do so. * * * I feel quite sure that a very grievous fraud has been perpetrated on this court. The whole proceeding was conceived in fraud and carried out in fraud."

Appellant advances this proposition:

"If defendant, Owens, did not know residence of plaintiff, Kathryne Kasser Owens, law did not cast upon him the duty of trying to find said residence, and therefore court in original cause had jurisdiction by publication over person of defendant, and original divorce decree was not void."

It may be said at the outset that, to upset the judgment appealed from, it will not be sufficient to show that the divorce decree was not void. Even though all proceedings were on their face in strict compliance with statutory requirements, so as to give the court jurisdicto give the court jurisdiction of appellee, they might be so false and perjured as to constitute a fraud upon appellee and upon the court, rendering the decree resting thereon voidable in equity. 19 C. J. 166; R. C. L. 448. We do not think that appellant would contend otherwise.

The sworn allegation of appellant, that he "had no means of ascertaining her present address," was false, according to the findings. The question is whether that constitutes such fraud upon appellee and upon the court that equity may avoid the decree. If by means of that false allegation appellant was enabled to withhold from appellee a notice which the law contemplated she should have, we cannot doubt that such fraud is made out.

Appellant points out that section 4096 requires mailing only "when the residence of the defendant is known." He argues that a person can have only one "legal residence" at one time; that the court has found that such legal residence was unknown to appellant that the allegation as to lack of means of ascertaining appellee's then present address was surplusage; and that the finding that he had such means is immaterial.

Here is a suggestion that the word "residence," as used in section 4096, means "legal residence" or domicile as distinguished from a temporary abiding place. If appellant could establish such a proposition, he would but defeat his purpose in this appeal. His jurisdictional allegation did not state, as section 4096 requires, that appellee's "residence" was unknown. He stated merely that he did not know her "present whereabouts." So, unless, for the purpose in view, "present whereabouts" may be accepted as equivalent to "residence," appellant's allegation does not comply with the statute, jurisdiction did not attach, and the decree is void. Therefore the allegation, if of any virtue, means that appellee's "residence" was unknown.

It is doubtless true, as appellant contends, that he need not have alleged that he had no means of ascertaining appellee's "present address." Yet the falsity of the allegation is not entirely immaterial. It points clearly to bad faith. Otherwise it may be disregarded. It is clearly inferable from the findings that appellant, had he desired, could easily have located appellee's residence. Dismissing from view the express falsity, there remains the question whether without it there would have been a false implication. Can one honestly swear that an adversary's residence is unknown when it can be easily ascertained? Ignorance excuses notice by mailing. May it be a willful, studied, and deliberate avoidance of the means of knowledge? The answer would seems to be obvious if any consideration is given to the plain purpose of section 4096.

Our public policy, as represented by legislation, has not been constant. The earliest provision for service by publication was the act of January 24, 1870, being chapter 27 of the Laws of 1869-70. By it diligent search was required, expressly and specifically, that the defendant might be served with process or notified by mail, according as he was within or without the territory. That statute was repealed by the act of January 2, 1874, being chapter 16 of the laws of that year, compiled as sections 2964-2966, C. L. 1897. That act omit-

ted the specific requirements as to diligence, and dispensed with notice by mailing. It does not seem to have been expressly repealed until by subsection 300, p. 294, c. 107, Laws of 1907. But, in the meantime, as part of the Code of Civil Procedure, the present sections 4095, 4096, Code 1915, had been enacted. The most important change thereby made was to restore the requirement of notice by mail.

Constructive service is in derogation of the common law. It is harsh. It lends itself to abuse. It is only resorted to from necessity. Hence the statute granting the right to proceed in that manner is to be strictly constructed and strictly followed. Priest v. Board of Trustees, 16 N. M. 692, 120 P. 894; Bowers v. Brazell, 31 N. M. 316, 244 P. 893. It would be taking a liberal view indeed to say that it was intended that one might close his eyes in order to remain ignorant.

Section 4096 was, as to persons in appellee's situation, remedial. It conferred a valuable right. It cured a defect which had existed in our law for 23 years. It righted a wrong theretofore permitted. From that point of view, it is to be liberally construed. Appellee's right to be notified by mail was absolute unless her residence was really, not pretendedly or technically, unknown.

So, while the statute has nothing to say of diligence or of good faith, they are necessarily implied. In enacting section 4096, the territory of New Mexico, though its Legislature, performed an act of justice and fairness. Adopted in that spirit, it must be followed and construed in the same way.

Appellant urges that we held differently in the recent case of Bowers v. Brazell, supra. We disclaim any intention to do so. Considering the very question here involved, we assumed, though we did not decide, that if the complaint had "pleaded that the affiant had actual knowledge, or reasonably accessible means of knowledge, of appellant's residence," it would have been sufficient to charge fraud in the suppression of

notice. Considering the further contention that the decree was void for lack of jurisdiction because the fact of nonresidence was stated merely on information and belief, we remarked that "our statutory procedure regulating service by publication is loose," and noted that "the New Mexico statute specifies no degree of diligence, and in fact, by its terms, requires none whatever." Appellant relics upon this language to support his present contention. We were at the time considering merely the showing required to support a publication; and we were referring merely to the terms of the statute, not to its implications. We were considering the sufficiency of the affidavit, not the truth or falsity of its contents. It is one thing to sustain jurisdiction when the showing made meets the requirements of the statute. It would be quite another to sustain a decree obtained by a fraudulent affidavit that the defendant's residence was unknown. That distinction we carefully pointed out in the opinion. Weaver v. Weaver, 16 N. M. 98, 113 P. 599, is not in point.

We conclude, therefore, that the court properly vacated the decree of divorce for fraud in the suppression of notice. In view of that conclusion, it is unnecessary to notice appellant's further contention that the finding in the divorce case that appellant had resided the requisite time within the state was res adjudicata, and could not be reviewed in the present case.

[2] Appellant also contends that Mary Kreisler Owens, who married appellant subsequent to the divorce decree and before the commencement of the present suit, was a necessary party. He admits that the weight of authority is to the contrary, and refers to 19 C. J. 172, where it is said:

"While there is apparently some authority to the contrary, the general rule is that, where the prevailing party has married again, the new spouse is not a necessary party to the proceeding to vacate the decree, at least unless such spouse has some substantial interest in the matter, as where the vacation of the decree would affect the property rights of such spouse."

The authorities cited to the contrary, and as illustrat-

ing the exception mentioned, are Sampson v. Sampson, 223 Mass. 451, 112 N. E. 84, Vanness v. Vanness, 128 Ark. 543, 194 S. W. 498, and Carlisle v. Carlisle, 96 Mich. 128, 55 N. W. 673.

It is not even suggested in these cases that the second spouse is a necessary party. It is merely held that, under certain conditions, it is proper to permit her to intervene for the protection of her own interests. With that question we are not concerned. Mary Kreisler Owens, though fully informed of the proceedings and present and testifying at the trial, has never asserted any rights or attempted to intervene. The fact of the second marriage in reliance upon the decree does not appear from any of the pleadings, came out only incidentally at the trial, and was brought to the attention of the trial court first and solely by a request made by appellant's counsel for a conclusion of law that the second spouse was a necessary party. While admitting all this, appellant's counsel contends that the question has never been decided in a community property state, and that in such a jurisdiction a wife's property rights are such that, in a situation like this, she should be held a necessary party. We are not impressed with the suggestion. It seems to us, on the contrary, that if there is any difference, there is less reason for so ruling in states where the law of community property prevails. In a common-law jurisdiction inchoate dower in the husband's real estate attaches from the date of marriage. In this state the property of the husband acquired before marriage remains his separate estate. So we overrule the contention.

Finding no error affecting the judgment, it will be affirmed and the cause remanded, and it is so ordered.

PARKER, C. J., and BICKLEY, J., concur.